IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CORYELL S. HENZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 11-cv-980-MJR |
| | ) | |
| LT. HECK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

Plaintiff Coryell S. Henz, an inmate at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint under 28 U.S.C. § 1915A, which provides:

> **(a) Screening.**— The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for Dismissal.**— On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>     **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>     **(2)** seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on

its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of the plaintiff's claim, *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks*, 578 F.3d at 581. At the same time, however, the factual allegations of a pro se complaint are to be construed liberally. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir.2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

In December 2009, an inmate at Pinckneyville Correctional Center took a hostage. The inmate was killed, and Pinckneyville was put on lockdown. On January 6, 2010, Pinckneyville's tactical team, known as "Orange Crush," came to Plaintiff's housing unit. Officers ordered Plaintiff to strip naked and put on a state-issued blue short-sleeved shirt, pants, and shower shoes (sandals) without clothes underneath. He was handcuffed. The inmates were lined up against a wall. Officers ordered the inmates outside. It was below freezing, 18 degrees. The inmates were marched to the gym, stopping and going, for 10 to 15 minutes. In the gym, the blowers were turned on high, which was very cold and intolerable. Plaintiff and the other inmates were again lined up against a wall. Some inmates passed out, some were bleeding, some crying for help. Plaintiff was having trouble breathing and slid to the floor. He told Officer Porter

he needed his inhaler. Porter said, "Get the fuck off the ground." When Plaintiff had difficulty getting up, Porter ordered him off the ground *now*. An unknown officer pulled Plaintiff off the ground by the arms, put Plaintiff against the wall, and pushed his head forcefully against the wall. Porter yelled, "Keep your fucking head on the wall. Bend your knees and don't lock them and you'll be fine." After about an hour, the inmates were ordered back outside. They were ordered to stop and stand several times in the below-freezing weather. After 10 to 15 minutes they made it back to the housing unit. Everything in Plaintiff's cell had been ransacked. He says no other cell house was treated this way. He believes Orange Crush did this to him and the other inmates in retaliation for the hostage-taking incident.

   Plaintiff submitted a grievance about Orange Crush to the grievance officer on January 26, 2010. The next day, Plaintiff was put in segregation. He was a given a disciplinary report saying he was under investigation, without further information. Plaintiff sent several requests to Internal Affairs to find out why he was put in segregation. Officer Furlow, an Internal Affairs officer, came to Plaintiff's cell and told him he was in segregation for the grievance he wrote (Doc. 1, p. 15). He added that another Internal Affairs officer, Officer Heck, was in charge of Plaintiff's investigation. Furlow just wrote the disciplinary report. Plaintiff was released from segregation on February 20, 2010, without having been seen or talked to by Internal Affairs.

   Soon after, Plaintiff found out he had lost his job and could not be rehired. Then, twice in March 2010, Officer Wertz locked Plaintiff's cell door when all the inmates were let out for recreation. Plaintiff asked Wertz why he wasn't letting Plaintiff out. Wertz said "You're not complying with Pinckneyville rules," which Plaintiff says referred to his having filed grievances (Doc. 1, p. 18).

Plaintiff subsequently obtained a new position in maintenance and moved to R-5 housing, where inmates deemed to be privileged lived. When he went to work on March 22, 2010, however, the officer on duty told him to go back. "Apparently you have an issue with Lt. Williams and he doesn't want you living in his building" (Doc. 1, p. 18). Lt. Williams ran the R-5 housing unit. When Plaintiff got to his cell, Lt. Williams was waiting. "Go pack your shit. You're going back to 4-house," he said. "You won't get another chance to write a grievance on us over here." He told Plaintiff not to put in for any job that would put him in that building. He would not let Plaintiff live there.

Plaintiff was eventually given a new job as a teacher's assistant and moved to R-5 while Williams was on medical leave. But as soon as Williams returned, he came to Plaintiff's cell. "Didn't I tell you last time you were over here that you couldn't live over here unless you're living in seg? Now pack your shit and get out of my building." This caused Plaintiff to lose the privileges other workers were entitled to, including outside yard and gym privileges.

On June 15, 2010, the light in Plaintiff's cell went out, and it remained out for over three weeks. Normally lights are replaced within days. Plaintiff notified officers Hammond and Fisher about his light. They ignored him. Plaintiff approached Lt. Runyon and started to ask him about the light, but Runyon stopped him before he could finish. "Don't address me with that issue right now. I'm busy." But Runyon was just talking to someone about sports at the time. Plaintiff tried to ask Runyon about the light again later that day. Runyon cut him off again and said if Plaintiff has such a problem with his light, Runyon could arrange for Plaintiff to be somewhere with lots of light. "Seg always has room," he said. "Write a grievance like you always do. I'd like to see you do that in the dark. You're going to get enough of writing grievances" (Doc. 1-1, p. 3). Four separate times, Plaintiff asked Lt. Sloan for help getting his light fixed.

Sloan ignored him. When Plaintiff asked Officer Porter if he would fill out a work order for Plaintiff's light, he told Plaintiff to file a grievance and walked away. Plaintiff believes these officers ignored his requests intentionally in retaliation for several grievances Plaintiff had written complaining of officer misconduct. Without the light, it was impossible for Plaintiff to read, write, or take care of basic daily functions.

After more than three weeks without a light, Plaintiff filed an emergency grievance with Warden Randy Davis. Davis determined it was not an emergency, however, and returned the grievance without investigation.

The next year, on February 11, 2011, Officer Ebers informed Plaintiff and his cellmate that they were moving back to R-5. After Plaintiff and his cellmate had packed, though, Ebers told Plaintiff his move had been canceled, even though Plaintiff's cellmate moved as scheduled. The following Tuesday, February 16, 2011, Plaintiff reported to work in the academic building and found out that Lt. Williams had had him fired because he didn't want Plaintiff living in R-5.

**Discussion**

The Court divides this pro se action into two counts based on Plaintiff's allegations. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed. The designation of these counts does not constitute an opinion as to their merit.

Plaintiff sues former director of the Illinois Department of Corrections, Michael P. Randle, and the current director, S.A. Godinez, for refusing to prevent ongoing harassment that constituted cruel and unusual punishment of Plaintiff in violation of the Eighth Amendment.

Plaintiff claims that Randle and Godinez, as the directors, were legally responsible for the overall operations of the Illinois Department of Corrections. To state a claim in a § 1983 action, a plaintiff must establish that the defendant was personally responsible for the deprivation of a constitutional right. *E.g.*, *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001); *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007). Plaintiff does not allege any personal involvement by either Defendant. Plaintiff asserts in one sentence that Godinez was "present for some of the events in this claim," but he does not say when or which events. Accordingly, Defendants Randle and Godinez are dismissed without prejudice.

**Count 1: Conditions of Confinement**

*A. Exposure to Cold Weather*

Plaintiff charges John Doe #1, the tactical team commander; John Doe #2, the direct supervisor to the tactical team commander; and C.O. Porter with maliciously subjecting him to unsafe conditions in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

The Eighth Amendment's prohibition on cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g.*, *Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). To prevail on a conditions-of-confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and sub-

jective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). It examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir. 1994). The conditions must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989. The subjective component focuses on the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. It requires that the prison officials had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298; *McNeil*, 16 F.3d at 124. The relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g.*, *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). A failure of prison officials to act in such circumstances suggests they actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22.

   Here, Plaintiff was forced outside in below-freezing weather, wearing only a short-sleeved shirt, pants, and shower shoes with no clothes underneath. He had to stand in a freezing gym for about an hour. Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir.1997); *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir.1986) (prisoners have a right under the Eighth Amendment to be free from extreme hot and cold temperatures).

Given that Plaintiff lacked clothing to protect him from the cold, and that Porter was outside and in the gym with Plaintiff, the Court finds that this claim against Porter merits further review.

Plaintiff may add other defendants in this action, but he does not state a claim against John Does #1 and #2. Plaintiff does not allege in his statement of facts that either John Doe #1, the tactical team commander, or John Doe #2, the supervisor to the tactical team commander, was personally responsible for any wrongdoing. *See Sanville*, 266 F.3d at 740. Under the section of his complaint setting out legal claims, Plaintiff asserts that the supervisor (John Doe #2) deliberately ordered the team to subject Plaintiff to unsafe conditions. That appears to be based only on speculation, though; Plaintiff does not suggest the supervisor was present when Orange Crush came to his housing unit.

On the other hand, Plaintiff does include unnamed Orange Crush officers in his statement of facts who might be liable; he claims one officer lifted him off the ground by his arms and forcefully pushed his head against the wall. Thus Plaintiff has leave to add John Doe defendants who were personally responsible for the conduct alleged. If it turns out later that a tactical team commander or supervisor was present or ordered the actions described by Plaintiff, he can add them as defendants at that time. *See Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir.1980) (noting that it is unnecessary to name defendants until their identity can be learned through discovery or through the aid of the court).

*B. Inadequate Lighting*

Plaintiff claims that officers Hammond, Fisher, Porter; lieutenants Runyon and Sloan; and Warden Davis forced Plaintiff to endure inadequate lighting and inadequate shelter, which constitutes cruel and unusual punishment in violation of the Eighth Amendment.

Here, regarding the objective component of this Eighth Amendment claim, Plaintiff alleges that the light in his cell was out for over three weeks. He claims it was impossible to read, write, or take care of basic daily functions. The Ninth Circuit has found adequate lighting to be one of the fundamental attributes of "adequate shelter" required by the Eighth Amendment. *See Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir.1985). It held that lighting which is inadequate for reading, causes eyestrain, and hinders attempts to ensure basic sanitation is a violation of the Eighth Amendment. *Id.* In *Bono v. Saxbe*, the Seventh Circuit considered whether cells "so poorly lighted that prisoners could not read" might violate inmates' substantive due process. 620 F.2d 609, 615–17 (7th Cir.1980). The court remanded the matter to the district court for further consideration. *Id.* at 617. Plaintiff alleges here that the lighting was so poor it was impossible to read and he could not take care of basic daily functions. The Court finds that the conditions alleged might have deprived Plaintiff of the minimal civilized measure of life's necessities. Regarding the subjective component of this claim, Plaintiff notified Hammond, Fisher, Runyon, Sloan, and Porter that his light was out, and they did not do anything about it. Therefore, Plaintiff's claim concerning inadequate lighting deserves further consideration.

Plaintiff filed an emergency grievance with Warden Davis about his light. Thus, he says, Warden Davis was fully aware of the harassment against Plaintiff yet did not intervene to protect him. The Court finds that the emergency grievance was sufficient to put Davis on notice of a potential constitutional violation. *See Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir.2010) (an emergency grievance submitted to the warden's office was sufficient at the pleading stage). Plaintiff's claim against Davis warrants further review as well.

**Count 2: Retaliation in Violation of the First Amendment**

Plaintiff brings a claim of retaliation against Internal Affairs officers Furlow and Heck; placement officer Sloan; lieutenants Williams, Sloan, and Runyon; and officers Hammond, Fisher, Porter, and Wertz for retaliating against Plaintiff in violation of the First Amendment.

"A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir.2010); *accord Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir.2012). To state a claim for retaliation, the prisoner must allege enough to put the defendants on notice so they can file an answer, which generally includes specifying the retaliatory act and the protected activity that motivated the defendants. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002); *see also McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir.2005). At the pleading stage, the prisoner need only "give enough detail to illuminate the nature of the claim and allow defendants to respond." *George v. Smith*, 507 F.3d 605, 608 (7th Cir.2007).

Plaintiff's retaliation claims merit further review. He says he submitted his grievance about Orange Crush on January 26, 2010, and the next day he was put in segregation. Officer Furlow told him Officer Heck was in charge of the investigation, and that Plaintiff was in segregation because of the grievance he wrote. These allegations are sufficient to put Furlow and Heck on notice of the claims against them.

When Plaintiff was released from segregation, he found out he had lost his job. He does not say exactly why that happened, but in March 2010, Lt. Williams would not allow Plaintiff to live in R-5 housing, where inmates had certain privileges. He said Plaintiff would not have another chance to write a grievance against the officers in R-5. Later, Lt. Williams ordered

Plaintiff out of R-5 again. And the next year, in February 2011, he canceled Plaintiff's scheduled move to R-5 and had Plaintiff fired from his job as a teacher's assistant. The placement officer would not hire Plaintiff back unless Lt. Williams approved. The Court finds that Plaintiff's retaliation claims against Lt. Williams and placement officer Sloan deserve further consideration.

Also shortly after Plaintiff was released from segregation, in early March 2010, Officer Wertz locked Plaintiff's door when it was time for recreation. Plaintiff believes Wertz's statement (that Plaintiff was not following Pinckneyville rules) referred to grievances Plaintiff had written. Plaintiff does not actually say what those grievances were about; he had submitted his grievance about Orange Crush in late January, while the incidents with Wertz did not happen until early March. But, in keeping with its responsibility to construe Plaintiff's pro se complaint liberally, the Court will give this claim further consideration.

The parties should note, at this point, that if Plaintiff's grievances that led to the alleged retaliation by Williams, Sloan, and Wertz are different from the Orange Crush grievance, then the claims against these three defendants may be subject to severance. Williams, Sloan, and Wertz are not involved in other claims in this action. *See George v. Smith*, 507 F.3d 605 (7th Cir.2007) (unrelated claims against different defendants belong in separate lawsuits); Fed. R. Civ. P. 21.

Finally, Plaintiff's light went out in June 2010 and was left unreplaced for over three weeks. Plaintiff asked officers Hammond, Fisher, and Porter and lieutenants Runyon and Sloan about having the light replaced, but they ignored him. Porter told him to file a grievance; Runyon told him he'd like to see Plaintiff file a grievance in the dark. Plaintiff does not specify what grievances may have led to this alleged retaliation, but Porter was involved in the Orange Crush incident, and Plaintiff filed a grievance about that. At this stage of preliminary review the

Court finds that Plaintiff's retaliation claims against Hammond, Fisher, Porter, Lt. Runyon, and Lt. Sloan deserve further consideration.

Moreover, Plaintiff filed the emergency grievance with Warden Davis about the light and made it known he was being harassed by the officers. Again, this is sufficient at this stage to suggest that Davis had notice of a potential violation of the First Amendment. *See Santiago*, 599 F.3d at 758–59. Plaintiff's claim against Davis warrants further review.

**Disposition**

IT IS HEREBY ORDERED that Defendants **RANDLE, GODINEZ, JOHN DOE #1,** and **JOHN DOE #2** are **DISMISSED** from this action **without prejudice**.

**COUNTS ONE (CONDITIONS OF CONFINEMENT)** and **TWO (RETALIATION)** shall receive further consideration.

The Clerk of Court shall prepare for Defendants **HECK, FURLOW, WILLIAMS, SLOAN (the placement officer), WERTZ, RUNYON, PORTER, HAMMOND, FISHER, DAVIS,** and **LT. SLOAN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within **thirty (30) days** from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

It is **FURTHER ORDERED** that, if Defendants no longer can be found at the

work addresses provided by Plaintiff, the employer shall furnish the Clerk of Court with Defendants' current work addresses, or, if not known, Defendants' last-known addresses. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court's files or disclosed by the Clerk.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper that has not been filed with the Clerk of Court or that fails to include a certificate of service will be disregarded by the Court.

It is **FURTHER ORDERED** that Defendants shall timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, Plaintiff was deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Williams** for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to **United States Magistrate Judge Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and any opposing party informed of any change in his address; the Court will not independently investigate Plaintiff's whereabouts. This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of Court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: August 28, 2012

/s/ **MICHAEL J. REAGAN**
**MICHAEL J. REAGAN**
**United States District Judge**