**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**CORYELL S. HENZ,**

**Plaintiff,**

**vs.**

**CHARLES HECK,**
**SEAN FURLOW,**
**RONALD WILLIAMS,**
**HIRAM SLOAN,**
**LARRIE WERTZ,**
**CECIL RUNYON,**
**KENNETH PORTER,**
**RYAN HAMMOND,**
**PAUL SLOAN,**
**KENT FISHER, and**
**RANDY DAVIS,**

**Defendants.**

**Case No. 11-cv-0980-MJR-SCW**

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

## I. Introduction and Procedural Background

This is a prisoner civil rights lawsuit filed under 42 U.S.C. 1983, alleging deprivations of federally secured constitutional rights. Claims against eleven Defendants survived threshold review pursuant to 28 U.S.C. 1915A (see Doc. 11). Now before the Court is a motion for partial summary judgment (Doc. 49) filed on January 17, 2013 by those eleven Defendants -- Cecil Runyon, Paul Sloan, Larrie Wertz, Charles

Heck, Hiram Sloan, Ronald Williams, Kenneth Porter, Kent Fisher, Sean Furlow, Randy Davis, and Ryan Hammond.

Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim relating to failure to rehire, because Plaintiff failed to exhaust his administrative remedies by not naming or sufficiently describing them in his grievance regarding not being rehired after he was released from segregation. Defendant Hiram Sloan also argues that he is entitled to summary judgment as Plaintiff failed to exhaust his administrative remedies against Sloan by failing to name or describe him in *any* grievance regarding retaliation.[1] The motion ripened with the filing of Plaintiff's response on March 27, 2013 (Doc. 62). For the reasons stated below, the Court denies Defendants' motion.

## II. Summary of Key Facts and Allegations

Plaintiff -- then confined in Pinckneyville Correctional Center (PCC) -- filed his pro se complaint in this Court on November 2, 2011, alleging claims of retaliation and conditions of confinement (Doc. 1). More specifically, Plaintiff alleges as follows. On January 6, 2010, PCC's tactical team, the "Orange Crush," came to Plaintiff's housing unit and ordered everyone, including Plaintiff, to strip naked and put on blue short-sleeved shirts, pants, and shower shoes (sandals) with no clothes underneath. Plaintiff was handcuffed. He and other inmates were lined against a wall and then

[1] Two different Sloans are named as Defendants herein – Hiram Sloan (a placement officer), and Lieutenant Paul Sloan, a correctional officer. *See* Doc. 11, pp. 4-5; Doc. 40, p.2, p. 4.

ordered outside into below-freezing temperatures. The inmates were marched to the gym, stopping and going, for 10 to 15 minutes.

In the gym, the blowers were turned on high, which was cold and intolerable. Plaintiff and other inmates were lined up against a wall in the gym. After about an hour, the inmates were ordered back outside into the cold and were forced to stop and stand several times. It took them 10 to 15 minutes to make it back to the housing unit, where they discovered that their cells had been ransacked.

Plaintiff indicates that he submitted a grievance about the Orange Crush on January 26, 2010. The next day, Plaintiff was put in segregation (Doc. 11 at p. 3). He was given a disciplinary report saying he was under investigation, without further information. Plaintiff sent several requests to Internal Affairs to find out why he was put in segregation. Officer Furlow, an Internal Affairs (IA) officer, came to Plaintiff's cell and allegedly told Plaintiff that he was in segregation for the grievance he wrote (Doc. 1 at p. 15). Furlow said that another IA officer, Officer Heck, was in charge of Plaintiff's investigation (Doc. 11 at p. 3). Plaintiff was released from segregation on February 20, 2010 without talking to Internal Affairs (*id.*).

After Plaintiff was released from segregation, he learned he had lost his job and could not be rehired. Plaintiff alleges that in March 2010, Officer Wertz twice locked Plaintiff's cell door when all the other inmates were let out for recreation (Doc. 11 at p. 3). Plaintiff asked Wertz why he wasn't letting Plaintiff out and Wertz told him, "You're not complying with Pinckneyville rules," which Plaintiff believes referred to his having filed

grievances (Doc. 1 at p. 18). Plaintiff then obtained a new position in maintenance and moved to R-5 housing (Doc. 11 at p. 4).

When Plaintiff went to work on March 22, 2010, however, an officer told Plaintiff to go back, as "apparently you have an issue with Lt. Williams and he doesn't want you living in his building" (Doc. 1 at p. 18). Lieutenant Williams ran R-5 housing unit. When Plaintiff returned to his cell, Williams informed him to "go pack your shit. You're going back to 4-house. You won't get another chance to write a grievance on us over here" (*id.*). Williams also told Plaintiff not to put in for any job that would put him in R-5 housing as he would not let Plaintiff live there (Doc. 11 at p. 4).

Plaintiff was later given a new job as a teacher's assistant and was moved back to R-5 while Williams was on medical leave (Doc. 11 at p. 4). However, when Williams returned he allegedly came to Plaintiff's cell and stated: "didn't I tell you last time you were over here that you couldn't live over here unless you're living seg? Now pack your shit and get out of my building" (*id.*).

Plaintiff also alleges that on June 15, 2010, the light in his cell went out, and it remained out for over three weeks (Doc. 11 at p. 4). When Plaintiff informed officers Hammond and Fisher about his light, they ignored him. Plaintiff tried to ask Lieutenant Runyon about the light, but Runyon replied: "don't address me with that issue right now. I'm busy." Plaintiff noted that Runyon was talking to someone about sports at the time (*id.*).

Plaintiff asked Runyon again about the light later that day but was told if he had a

problem with the lights, Runyon could arrange for Plaintiff to be somewhere else with lots of light. He allegedly told Plaintiff, "seg always has room. Write a grievance like you always do. I'd like to see you do that in the dark. You're going to get enough of writing grievances" (Doc. 1-1 at p. 3). Plaintiff also asked Lieutenant Sloan for help getting the light fixed, but Sloan ignored him (Doc. 11 at pp. 4-5). He also asked Officer Porter to fill out a work order for the light, but Porter allegedly told him to file a grievance. Plaintiff believes that his requests were ignored due to his writing grievances about officer misconduct (*id.*).

In conducting its review under 28 U.S.C. 1915A, the Court organized Plaintiff's allegations into two counts (Doc. 11 at pp. 6-11). The first count contains conditions of confinement claims, including exposure to cold weather (against Porter) and inadequate lighting (against officers Hammond, Porter, Fisher, Runyon, Lieutenant Sloan, and Warden Davis). Count two contains retaliation claims against Furlow, Heck, placement officer Sloan, Williams, Lt. Sloan, Runyon, Hammond, Fisher, Porter, and Werz.

Defendants have filed a motion for summary judgment in which they argue that Plaintiff failed to exhaust his administrative remedies. Specifically, Defendant Hiram Sloan argues that he is entitled to summary judgment, because Plaintiff's grievance dealing with being removed from his teaching assistant job does not mention or describe Sloan. Furthermore, all of the Defendants argue that they are entitled to summary judgment on the retaliation claim, because Plaintiff's March 1, 2010 grievance does not mention or describe any of them. Plaintiff responded in opposition to the motion.

## III. Applicable Legal Standards

### A. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Anderson v. Donahoe,*** **699 F.3d 989, 994 (7th Cir. 2012),** ***citing*** **FED. R. CIV. P. 56(a).** A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Serednyj v. Beverly Healthcare, LLC,*** **656 F.3d 540, 547 (7th Cir. 2011),** ***citing Anderson v. Liberty Lobby, Inc.,*** **477 U.S. 242, 248 (1986).**

### B. PLRA'S EXHAUSTION REQUIREMENT

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." ***Id.***

Thus, under the PLRA, exhaustion of administrative remedies is mandatory and unexhausted claims cannot be brought in court. ***Jones,*** **549 U.S. at 211.** The case may proceed on the merits only after any contested issue of exhaustion is resolved by the court. ***Pavey v. Conley*****, 544 F.3d 739, 742 (7th Cir. 2008).**

The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. ***Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).** The Seventh Circuit takes a strict compliance approach to exhaustion, requiring inmates follow all grievance rules established by the correctional authority. ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).** A prisoner must "file complaints and appeals in the place, and at the time, the prison's rules require." ***Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002).**

An inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances**.** ***Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).** However, if the prisoner fails to follow the proper procedure, the grievance will not be considered exhausted. ***Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).**

Additionally, exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust before he commences his federal litigation. He cannot exhaust *while* his lawsuit is pending or *in anticipation* of his remedies soon being exhausted. ***See Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).**

If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. ***See Jones,* 549 U.S. at 223; *Burrell v. Powers*, 431 F.3d 282, 284-85**

**(7th Cir. 2005).**[2] Exhaustion-based dismissals are made without prejudice. ***Burrell,* 431 F.3d at 285,** *citing* ***Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir. 2002)("Dismissal for failure to exhaust is without prejudice…"), and** ***Ford v. Johnson,*** **362 F.3d 395, 401 (7th Cir. 2004)("*all* dismissals under § 1997e(a) should be without prejudice").**

"[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. ***Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).** When failure to exhaust administrative remedies is raised as an affirmative defense in a prisoner civil rights suit, the district court is to resolve the issue via the procedure delineated by the Seventh Circuit Court of Appeals in ***Pavey,* 544 F.3d at 742**:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows:
>
> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
>
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist

[2] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, allowing the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. ***See*** **FED. R. CIV. P. 12(d).**

> remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.
>
> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

Although the court in ***Pavey*** included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." ***Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009).**

**C. EXHAUSTION REQUIREMENTS UNDER ILLINOIS LAW**

As an inmate confined within the Illinois Department of Corrections (IDOC), Henz was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code 504.800, *et seq*.**

The grievance procedures first require inmates to speak with the counselor about their complaints. **20 Ill. Admin. Code 504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. ***Id.*** The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision

> does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code 504.810(a)(b).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code 504.830(d).**

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board (ARB). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code 504.850(a).**

"The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of

the Director's decision." **20 Ill. Admin. Code 504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO) who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code 504.840(a).**

If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code 504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code 504.850(g).**

## IV. Analysis

### A. Exhaustion as to Hiram Sloan (Retaliation Claim)

Hiram Sloan argues that he is entitled to summary judgment because none of the grievances Plaintiff filed regarding allegations of retaliation mentions or describes Sloan. Plaintiff's complaint alleges that Hiram Sloan retaliated against Plaintiff by failing to rehire Plaintiff to his job as a teacher's assistant in February 2011. Defendant argues that Plaintiff failed to exhaust his administrative remedies against him because the March 1, 2011 grievance, regarding not being rehired, was only against Williams and

does not mention or describe Defendant Sloan. Defendant cites to a previous Order from this Court in support of his argument that the failure to name Defendant Sloan is a failure to properly exhaust his claims against Sloan. ***See Gevas v. Walters*, Case No. 11-cv-0352-MJR-SCW (Doc. 39), 2011 WL 6740398 (S.D. Ill. Nov. 29, 2011), *aff'd, Gevas v. Cox*, Case No. 11-cv-0352-MJR-SCW (Doc. 44), 2011 WL 6740396 (S.D. Ill. Dec. 22, 2011).**

Defendant Sloan's reliance on this Court's ruling in *Gevas* is misplaced. This Court later struck that Order and overturned its ruling that a failure to name a defendant in the grievance constituted a failure to exhaust. In that case, this Court vacated its previous decision and determined that the plaintiff *had* exhausted his administrative remedies because his grievance referred to the placement officer, although it did not identify the specific defendant, and the grievance had been resolved on the merits. ***See Gevas v. Cox*, Case No. 11-cv-0352-MJR-SCW (Doc. 90; S.D. Ill. May 2, 2012), *citing Glick v. Walker*, 385 Fed. Appx. 579, 582-83 (7th Cir. 2010); *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).**

This Court found that the grievance in that case served its purpose in providing prison officials with a fair opportunity to address the complaints raised in the grievance even though it did not identify the individual who was the subject of his complaints. The Court also noted that the grievance had been reviewed both at the institutional level as well as the ARB without being denied for a procedural default of failing to properly identify the subject of the grievance.

That decision was consistent with exhaustion requirements under IDOC and Seventh Circuit precedent. While the grievance procedure for inmates housed in the Illinois Department of Corrections requires inmates to identify the individuals they are grieving against, inmates are not required to necessarily name the individual involved, but rather are required to "include as much descriptive information about the individual as possible" if the names of individuals are not known. **20 Ill. Admin. Code 504.810(b).**

The Seventh Circuit has further held that an inmate is required to provide enough information to serve its function of giving "prison officials a fair opportunity to address [an inmate's] complaints." ***Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).** When prison officials have been afforded an opportunity to address an inmate's claims internally, prior to federal litigation, the purpose of exhaustion has been met and the prisoner has properly exhausted his available remedies. ***Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).**

Thus, the Seventh Circuit has indicated that when a grievance is resolved on its merits and is not returned for failure to follow procedural rules, like specifically naming an official being grieved about, the issues in that grievance have been properly exhausted. ***Riccardo v. Rausch*, 35 F.3d 521, 524 (7th Cir. 2004) (When a grievance is "resolved on the merits" despite an inmate's failure to strictly adhere to the rules, "the federal jurisdiction will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action.").**

Here, while Plaintiff failed to name or describe Hiram Sloan, that does not

constitute a failure to exhaust. Plaintiff's March 1, 2010 grievance indicated that he had been informed by Mrs. Caldwell, a teacher in the school building where Plaintiff previously worked as an assistant, that after checking with "placement" she learned that he could not be rehired (Doc. 49, Ex. A). Plaintiff's grievance complains that he believes this was done in retaliation by Internal Affairs Officers and Pinckneyville Administration for a grievance he wrote on January 19, 2010 (*id*.).

Although Hiram Sloan was not specifically mentioned, Plaintiff indicated it was "placement" who told Ms. Caldwell that Plaintiff could not be rehired, and Sloan does not deny that he is a placement officer. Instead, he argues only that Plaintiff did not assert that Defendant Sloan was *the* placement officer that said Plaintiff could not be rehired.

Even though Defendant Sloan was not named as the placement officer at issue in the grievance, Plaintiff's grievance provided prison administrators with a "fair opportunity" to address his complaints about not being rehired. While the name of the placement officer who informed Caldwell he could not be rehired is not mentioned, Plaintiff provided enough information in his grievance for prison administrators to investigate the complaints; they could have easily determined which placement officer spoke with Ms. Caldwell.

Furthermore, the Court notes that Plaintiff's grievance was resolved on the merits and was not returned for failure to follow procedures rules, even though Plaintiff only grieved retaliation by "Internal Affairs officers and Pinckneyville Administration" and

not a specific staff member. The Seventh Circuit has indicated this type of resolution on the merits to be a signal that the issues have been properly exhausted. ***Rausch,* 375 F.3d at 524**.

Here, neither the prisoner administrators nor the ARB rejected Plaintiff's grievance on the ground that he failed to properly identify internal affairs officers, administration, or placement, evidencing that administrators were given enough information to alert them to the problems and enable them to take corrective action. That is all that the PLRA and the law of this Circuit requires. Thus, the Court finds that Plaintiff has exhausted his administrative remedies against Sloan.

### B. EXHAUSTION AS TO OTHER DEFENDANTS (RETALIATION CLAIM FOR FAILURE TO REHIRE)

The same analysis applies to the arguments of the other Defendants who allege that Plaintiff failed to name them in his March 1, 2010 grievance regarding his failure to be rehired. While Plaintiff did not name or provide descriptions for Defendants Furlow, Heck, Paul Sloan, Williams, Runyon, Hammond, Fisher, Porter, and Wertz, Plaintiff's grievance indicated that various internal affairs officers and Pinckneyville administration were retaliating against him. This supplied the prison administration with enough information about Plaintiff's complaints regarding inability to be rehired to his job, and the retaliation behind that decision, to provide those investigating his grievance with an opportunity to deal with his complaints and to inquire as to which individuals were involved in denying Plaintiff his job.

Moreover, none of the officials reviewing Plaintiff's grievance ever rejected the grievance for a failure to identify proper individuals to the grievance. Thus, the Court finds that Plaintiff furnished prison officials with enough information to examine the issues in his grievance. Accordingly, the Court **DENIES** Defendants' motion for summary judgment.

## IV. Conclusion

The Court **DENIES** Defendants' exhaustion-based motion for summary judgment (Doc. 49) in its entirety. The Court finds that Plaintiff properly exhausted administrative remedies regarding his claim that he was retaliated against by not being rehired to his teacher's assistant job.

IT IS SO ORDERED.

August 18, 2013.

s/ ***Michael J. Reagan***
Michael J. Reagan
United States District Judge